IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DIANA PALOS and JESUS PALOS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. SA-13-CV-805-XR |
| | § | |
| SAMMY VICK, M.D. SAMMY VICK, M.D., P.A., BOSTON SCIENTIFIC CORPORATION, C.R. BARD, INC., and TISSUE SCIENCE LABRATORIES LTD., | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Plaintiffs' motion to remand. Doc. No. 5. After careful consideration, the Court GRANTS the motion and remands the case to state court.

**BACKGROUND**[1]

This lawsuit arises out of the medical treatment Plaintiff Diana Palos received from her physician, Defendant Dr. Sammy Vick. In order to treat Mrs. Palos's urogynecological condition, Dr. Vick allegedly implanted several medical devices. One of these, a Solyx Single Incision Sling System, was allegedly manufactured by Defendant Boston Scientific Corporation. The other device, the Pelvicol Acellular Collagen Matrix, was allegedly manufactured by Defendants C.R. Bard and Tissue Science Laboratories. As a result of the surgical procedure implanting these devices, Mrs. Palos allegedly suffered severe injuries. On July 8, 2013, Plaintiffs filed suit in the 407th District Court of Bexar County, Texas. Specifically, Plaintiffs allege a negligence cause of action based on: (1) failure to select and implant a proper device, (2)

---

[1] The factual allegations are taken from the Notice of Removal. Doc. No. 1.

failure to select the proper medical procedure, (3) improperly selecting Plaintiff Diana Palos as a suitable candidate for the medical devices used, (4) failure to obtain the appropriate informed consent; and (5) improperly using medical devices that had high rates of failure and a record of serious complications. Doc. No. 5.

On September 4, 2013, Defendants Boston Scientific, C.R. Bard, and Tissue Scientific Laboratories ("Removing Defendants") removed the case to this Court on the basis of diversity jurisdiction.  It is undisputed that the Plaintiffs are Texas residents.  Likewise, Dr. Vick and Sammy Vick M.D. P.A. are Texas residents ("In-State Defendants").  Therefore, the parties are not completely diverse as is generally required by 28 U.S.C. § 1332.  The Removing Defendants argue that In-State Defendants were improperly joined and that therefore diversity jurisdiction is proper.  On October 3, 2013, Plaintiffs filed a motion to remand.  The In-State Defendants, who did not consent to Removal, also support Plaintiff's motion to remand.[2]  Doc. No. 6.  On October 18, 2013, the Removing Defendants filed an untimely response that largely repeats the arguments in favor of jurisdiction raised in their Notice of Removal.[3]

## LEGAL STANDARD

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. 28 U.S.C. § 1441(a).  Removal is proper in any case where the federal court would have had original jurisdiction. *Id.*  To determine whether jurisdiction is present for removal, the Court considers the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44

---

[2] The Removing Defendants argue that this consent is unnecessary because the In-State Defendants are improperly joined.  Doc. No. 1
[3] The Local Rules provide 7 days to respond to a non-dispositive motion (a motion to remand is considered non-dispositive).  Accordingly, the Removing Defendants' response was due on or before October 10, 2013. Local Rule CV-7(e)(i).

F.3d 256, 264 (5th Cir. 1995).  The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  Any ambiguities are to be construed against removal, as the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

A removing party can establish federal jurisdiction on the basis of 28 U.S.C. § 1332 by demonstrating that in-state defendants have been "improperly joined." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004).  To establish improper joinder, a removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) [an] inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003).  The Fifth Circuit has held that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

## DISCUSSION

As an initial matter, Plaintiffs have a reasonable basis to recover against the In-State Defendants for medical negligence.  The Removing Defendants have not alleged actual fraud in the pleading of jurisdictional facts.  Accordingly, the Removing Defendants cannot rely on traditional concepts of improper joinder to overcome the lack of complete diversity in this case.

Instead, the Removing Defendants appear to be advancing a fraudulent-misjoinder theory.  Beginning with the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353

(11th Cir. 1996), some courts have permitted removal absent complete diversity on grounds of fraudulent misjoinder.[4] Although the Removing Defendants argue to the contrary, the Fifth Circuit has not conclusively accepted *Tapscott* and the fraudulent misjoinder theory of removal jurisdiction. "The Fifth Circuit has not directly applied the fraudulent-misjoinder theory, but it has cited *Tapscott* with approval and has acknowledged that fraudulent misjoinder of either defendants or plaintiffs is not permissible to circumvent diversity jurisdiction." *Centaurus Unity v. Lexington Ins. Co.*, 766 F.Supp.2d 780, 789 (S.D. Tex. 2011) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) ("Thus, without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case.")). When determining whether the removing defendant has been fraudulently misjoined, the Court asks: "(1) [if] one defendant has been misjoined with another defendant in violation of the applicable joinder rules; and (2) if so, is the misjoinder sufficiently egregious to rise to the level of a fraudulent misjoinder." *Centaurus Unity*, 766 F.Supp.2d at 789.

Assuming that *Tapscott* applies, the Removing Defendants have not established fraudulent misjoinder. First, under the applicable joinder rules, the parties are properly joined. Second, even if the parties were not properly joined, any putative misjoinder is not sufficiently egregious to be fraudulent. Since this case was originally filed in state court, Rule 40(a) of the Texas Rules of Civil Procedure governs the analysis. *Centaurus Unity*, 766 F.Supp.2d at 789 n. 27 (citing *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F.Supp.2d 555, 563 (N.D. Tex. 2009) ("A federal court applies state joinder law in assessing whether there has been a

---

[4] Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins an in-state defendant without a reasonable procedural basis to do so. So long as the plaintiff has viable substantive claims against both defendants, under traditional improper joinder rules such a case could not be removed to federal court absent complete diversity.

4

misjoinder and whether such misjoinder rises to the level of improper joinder."). Rule 40(a) substantially mirrors Rule 20(a) of the Federal Rules of Civil Procedure. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 ("Texas has adopted the same requirements for proper joinder as those in Federal Rule 20(a)").

Under Rule 40(a), claims against multiple defendants may be joined in one action if "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and at least one "question of law or fact common to all of them will arise in the action." TEX R. CIV. P. 40(a). "Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action." *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 166 F.R.D.143, 148-149 (N.D. Tex. 2010).

In this case, Plaintiffs have brought medical negligence claims against the In-State Defendants and products liability claims against the Removing Defendants. The Removing Defendants argue that these claims "are separate and distinct such as that they do not arise from the same transaction or occurrence nor do they involve a common question of law or fact." Doc. No. 1 ¶ 22. The Court disagrees. First, both the medical negligence claims and the products liability claims arise out of the same occurrence: the surgical procedure that allegedly caused Plaintiffs' injury. Plaintiffs' right to sue both parties was predicated on the same event and therefore the claims arise out of the same transaction or occurrence. In addition, there are several common questions that pertain to both parties. For example, whether the In-State Defendants substantially altered the products before implanting them will impact both the In-State Defendants' negligence liability and the Removing Defendants' products liability. Two of the

three Removing Defendants have denied liability on the basis of comparative fault. Doc. No. 5. Specifically, the Removing Defendants allege that the In-State Defendants misused the devices and that therefore the manufacturers cannot be liable for any of Plaintiffs' alleged harm. Resolution of this defense necessarily implicates factual questions common to all Defendants. Other district courts in Texas have held that similar claims against medical providers and medical device manufacturers are properly joined. *DeLeon v. Tey,* No. M-12-228, 2012 WL530732 (S.D. Tex. Oct. 25, 2012) ("it was prudent for Plaintiff to sue all defendants in the same action because it reduces the possibility that the defendants will prevail on 'empty chair' defenses"); *Oesch v. Woman's Hosp. of Tex.*, No. H-11-770, WL950109 (S.D. Tex. Mar. 20, 2012); *Salazar v. Lopez,* No. M-13-188, 2013 WL 112302 (S.D. Tex. Mar. 18, 2013).[5]

The Removing Defendants cite to *Crockett* for the proposition that claims against medical providers and device manufacturers are not properly joined. Doc. No. 1. *Crockett* is distinguishable on both procedural and substantive grounds. Procedurally, the Fifth Circuit held in *Crockett* that the district court had jurisdiction over the diverse defendants *after* the State Court had severed the claims against in-state defendants. 436 F.3d at 533. Therefore, there were no in-state defendants left in the case when the Fifth Circuit conducted its jurisdictional analysis. *Crockett* therefore stands for the proposition that this Court would have jurisdiction over the Removing Defendants if the state court severed the claims against the In-State Defendants. Before that can occur, the entire case must be remanded, as it was initially in *Crockett*.

*Crockett* is also distinguishable substantively. In that case, plaintiffs joined both tobacco companies and medical providers in a wrongful death suit. *Crockett*, 436 F.3d at 530. In

---

[5] Other federal district courts outside of Texas have held similarly. See e.g., *Livingston v. Hoffman-LaRoche*, No. 9C2611, 2009 WL 2448804 (N.D. Ill. Aug. 6, 2009); *Watson v. Gish*, No. C 10-03770, 2011 WL 2160924 (N.D. Cal. June 1, 2011); *McDowell v. Davol*, No. 3:08-CV-90, 2008 WL 2713708 (E.D. Tenn. July, 10, 2008); *Robinson v. Swedish Health Services*, No. C10-01130, 2010 WL 816818, (W.D. Wash. Mar 5, 2010).

*DeLeon*, the court factually distinguished *Crockett* in a similar case by noting that "the connection a doctor has with a manufacturer is much more attenuated when the doctor merely fails to diagnose a patient's condition that was caused by a defective product than when a doctor surgically implants a defective product in the patient's body." *DeLeon*, 2012 WL 5305731 at 3. In *Crockett*, plaintiff's injury flowed from: (1) the physician's failure to diagnose the long-term health effects associated with cigarettes, and (2) the tobacco companies' long-standing practice of producing a dangerous product. These are distinct events. In this case, however, the harm flows from one single act: the surgical implantation by one Defendant of an allegedly defective product manufactured by other Defendants. *Crockett* therefore does not compel a different result in this case.

## CONCLUSION

In light of the foregoing analysis, the motion to remand is GRANTED. The Clerk is directed to remand the case to state court and to close this case.

SIGNED this 22nd day of October, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE